NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALTER COVINGTON | **Hon. Dennis M. Cavanaugh** |
| Petitioner, | **OPINION** |
| v. | Civil Action No. 06-CV-112 (DMC) |
| UNITED STATES OF AMERICA | |
| Respondent. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Petitioner, Walter Covington ("Petitioner"), appearing *pro se*, for relief under 28 U.S.C. § 2255. After carefully considering Petitioner's submissions and based upon the following, it is the finding of this Court that Petitioner's application is **denied**.

**I.     BACKGROUND**

In 1999, the Federal Bureau of Investigation ("FBI") in conjunction with the Jersey City Police Department ("JCPD") began an investigation into a Jersey City group known as the "Lex Mob", which was reputed to be one of the biggest narcotics dealing groups in Hudson County, New Jersey. By the summer of 1999, the Lex Mob had firm control over the drug dealing activity in the vicinity of Lexington and Bergen Avenues in Jersey City. Petitioner was a street level narcotics dealer and was responsible for distributing cocaine and returning profits to the

Lex Mob lieutenants.

On March 21, 2002, Petitioner was arrested on state narcotics charges, for which he was sentenced on May 10, 2002 to four years in state custody. On March 27, 2002, Petitioner had his initial appearance on a federal criminal complaint charging Petitioner with selling cocaine to another person on or about September 28, September 29, and November 1, 1999. E. Alexander Jardines, Esq. ("Jardines") was assigned to represent Petitioner, who was ordered detained. On August 9, 2004, Petitioner plead guilty before this Court to a federal indictment. The charges against Petitioner were that from 1994 to March 2002, Petitioner and others conspired to distribute at least 500 grams of a substance mixture containing a detectable amount of cocaine, a Schedule II Narcotic controlled substance, contrary to 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B)(ii), in violation of 21 U.S.C. § 846. The Pre-Sentence Report ("PSR") stated that Petitioner has a Category I criminal history, as all of his four prior juvenile adjudications and two criminal convictions were considered related offenses pursuant to U.S.S.G. § 4A1.2(a)(2). Petitioner's sentencing guideline range was 60 to 71 months incarceration. Petitioner was released from state custody on September 13, 2004, and transferred to federal custody.

Petitioner was sentenced before this Court on February 9, 2005 to 70 months imprisonment and five years supervised release. During the sentencing hearing, Petitioner asked the Court if he would receive credit for the time he spent in federal custody prior to this sentencing. This Court, defense counsel, and the Assistant U.S. Attorney ("AUSA") discussed the structure of the plea and Petitioner's state charges. This Court indicated that the Bureau of Prisons determined Petitioner's credit for time already served in jail. The AUSA, however,

explained that Petitioner's plea agreement with the Government dealt only with one specific sale of narcotics to an undercover police officer, and that the subject sentencing for the narcotics conspiracy charge was a separate offense.  With this agreement, instead of Petitioner pleading guilty to an individual sale of narcotics to an undercover police officer, the plea agreement was broadened for Petitioner to plead guilty to conspiracy charges.  This plea agreement involved charges for a greater amount of narcotics in exchange for a reduced sentence of 60 months because these charges did not treat Petitioner as a career offender.  If Petitioner was considered a career offender, one sale to an undercover police officer would carry a sentence of 188 months in jail.  After hearing that Petitioner's plea agreement was structured to give him less jail time, the Court made its intentions clear by informing Petitioner that his previous federal offense would not be credited to the subject offense since each offense is deemed separate as part of the plea agreement.

On October 28, 2005, Petitioner filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255.  Petitioner asks that he be re-sentenced to receive credit for 32 months served in state custody pursuant to U.S.S.G. § 5G1.3(b)(application note 2).  The record reflects that the Guidelines analysis applied by this Court and the PSR are supported by the facts of this case.  This Court reasonably sentenced Petitioner within the applicable Guideline range, and made certain that Petitioner understood that he would not receive credit for time already served.  Moreover, the record shows that the sentence was appropriate in light of the facts enumerated in 18 U.S.C. § 3553(a), including the nature of the crime, Petitioner's role, and Petitioner's lengthy criminal history.

**II.   DISCUSSION**

Pursuant to U.S.S.G § 5G1.3, an imposition of a sentence is subject to an undischarged term of imprisonment

> (a) if the instant offense was committed while the defendant was serving a term of imprisonment...the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment [or]
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction...and that was the basis for an increase in the offense level for the instant offense...the court is permitted to adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3 (2008).

U.S.S.G. § 5G1.3 "interact[s] to protect a criminal defendant from duplicative prosecutions." U.S. v. Bidwell, 393 F.3d 1206, 1209 (11th Cir. 2004). The intended purpose of section § 5G1.3(b) is to effectively credit a defendant, for purposes of the guidelines, "who have already served time, generally in another jurisdiction, for the same conduct or course of conduct." U.S. v. Hearing, 253 Fed. Appx. 874, 876 (11th Cir. 2007). "For instance, when a defendant serving time in state prison for drug possession receives a subsequent federal sentence for the same course of conduct, the sentences will be served concurrently to credit the time already served." U.S. v. Flowers, 13 F.3d 395, 397 (11th Cir. 1994).

Petitioner claims that he should have received credit for the thirty-two months served in state custody pursuant to U.S.S.G. § 5G1.3(b)(n. 2) because both sentences (federal and state) derive from one another and are related to Petitioner's offensive conduct. Petitioner's argument is incorrect as

4

a matter of law and refuted by the record. Petitioner's subject sentence does not result from another offense related to the present conviction. As per the plea agreement, the two convictions are not related offenses. Moreover, during Petitioner's sentencing, this Court sentenced him within the applicable Guideline range, and made certain that Petitioner understood that he would not receive credit for time already served. Thus, Petitioner is not entitled to a credit of 32 months pursuant to U.S.S.G. § 5G1.3(b).

Petitioner excuses his failure to raise claims regarding his sentence by alleging violations of his due process rights. As the Supreme Court has emphasized, a defendant may not use § 2255 motion as a substitute for an appeal. U.S. v. Frady, 456 U.S. 152, 165 (1982). As the Seventh Circuit stated, "a habeas corpus petition is rarely if ever the proper vehicle by which to challenge the application of a sentencing guidelines provision where the sentence has become final and the petitioner did not directly appeal the issue." Prewitt v. U.S. 83 F.3d 812, 816 (7th Cir. 1996) (rejecting petitioner's §2255 motion alleging that his counsel was ineffective based upon his attorney's failure to argue that § 5G1.3(c) applied to his sentence). Accordingly, a defendant who seeks to raise a claim in a § 2255 motion that he failed to raise at trial, sentencing, or on direct appeal, must show "cause" for failing to raise the claim in those proceedings and "actual prejudice" resulting from the claimed error. Id. at 167-168. Actual prejudice may be established only in "extremely rare circumstances." Rock v. Zimmerman, 729 F.Supp 398, 409 (M.D. Pa. 1990), aff'd 959 F.2d 1237 (3d Cir. 1992), cert. denied 505 U.S. 1222 (1992).

In order to determine whether a due process violation has occurred during sentencing, the Third Circuit has established a two part test: "(1) has misinformation of a constitutional magnitude been given to the district court; and (2) has that misinformation been given specific

consideration by the sentencing judge?" U.S. v. Matthews, 773 F.2d 48, 51 (3d Cir. 1985). Thus in order to sustain a due process claim, Petitioner "must show that he was denied an opportunity to address allegedly false information presented to the sentencing judge." U.S. v. Barhnart, 980 F.2d 219, 226 (3d Cir. 1992).

Petitioner states that he was improperly sentenced because he should have been given credit pursuant to U.S.S.G. § 5G1.3(b)(application n. 2) for the time he spent in state custody in a related narcotics case. Yet, Petitioner was given credit for this conviction through the application of § 4A1.2, which considered this conviction a related case to the conspiracy that Petitioner plead guilty to in this Court. Furthermore, § 5G1.3 does not apply to Petitioner's case. As a result, Petitioner failed to meet his burden of proof as to either prong of the Matthews test.

Petitioner further states that he was denied effective assistance of counsel because his counsel failed to raise the § 5G1.3 argument at sentencing. In Strickland v. Washington, the Supreme Court articulated the standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

446 U.S. 668, 687 (1984).

A petitioner seeking to vacate his sentence must satisfy both prongs of the Strickland test: a breach of duty and prejudice as a result of the breach. U.S. v. Nino, 878 F.2d 101, 103-104 (3d Cir. 1989).

To minimize the distortions of hindsight, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Thus, in assessing whether the assistance was reasonable, the court must be "highly deferential and not second guess counsel's assistance after conviction." Id.  The Third Circuit holds Strickland as "requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant." McAleese v. Mazurkiewics, 1 F.3d 159, 170-71 (3d Cir. 1993).  To prove prejudice, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 694.  A "reasonable probability" is more than a theoretical possibility, it is a probability sufficient to undermine confidence in the outcome.  Id.  This Court must accept the truth of Petitioner's nonfrivolus factual allegation and examine to see if those claims conceivably satisfy both prongs of the test.

Petitioner argues that his counsel, Jardines, was ineffective in that he allowed Petitioner to be sentenced for conduct that he already served time for, without moving to have the sentence run concurrent in violation of § 5G1.3 n. 2 and in violation of Double Jeopardy.  Petitioner has not alleged any facts to show he was prejudiced as is required by the Strickland test, or that Double Jeopardy is in any way an issue in this case.  Additionally, Petitioner failed to show that the outcome of the case would have been different had counsel acted differently.  Thus, Petitioner's motion is denied.  Also, Petitioner claims that his counsel erred in failing to ask the Court to apply § 5G1.3 and award him credit for time spent in state custody on a related case. Section 5G1.3 applies only to undischarged terms of imprisonment and because Petitioner's

concurrent state sentence had already been served by the time he was sentenced in the federal matter, § 5G1.3 did not apply.

Further, Petitioner fails to demonstrate that counsel's performance fell outside the range of reasonable professional assistance.  The issue regarding credit for time spent in state custody was raised with this Court during the sentencing hearing.  The AUSA explained that Petitioner's plea agreement was structured in a way to reduce Petitioner's sentence and that those charges were not related to the previous sentence in state custody.

Petitioner presents no evidence that even if his attorney moved for his sentencing to run concurrent under the guise of a § 5G1.3 application, that the application would have been granted and the outcome of the case would have been different.  Time credited towards the state conviction cannot count towards the federal sentence, as 18 U.S.C.§ 3585(b) expressly precludes the Bureau of Prisons from crediting a prisoner for time served prior to the commencement of a federal sentence if such time has already been credited towards another sentence.

Petitioner also fails to prove that he was prejudiced by the fact that his attorney did not ask for a concurrent sentence pursuant to § 5G1.3.  Petitioner only presents allegations which contain no evidence that he was in fact prejudiced by the failure of his attorney to explicitly ask for a concurrent sentence under § 5G1.3, nor does he present evidence that the outcome of the case would have been different in any way.  As noted at sentencing, the plea agreement negotiated by Jardines allowed Petitioner to escape being labeled a career offender and to have all his prior criminal conduct considered as related charges pursuant to § 4A1.2(a)(2).  As a result, Petitioner was sentenced with zero criminal history points and was given a criminal

history Category I, with a mandatory minimum of 60 months, instead of facing 188 months as a career offender. Petitioner has failed to prove either a breach of duty or prejudice resulting from that breach under <u>Strickland</u>, and his assertions are accordingly rejected.

### III. CONCLUSION

A review of the plea agreement, PSR, the factors outlined in 18 U.S.C. § 3553(a) and the record indicates that Petitioner's sentence was reasonable given the nature of the crime, Petitioner's role and his lengthy criminal history. The application of the Guidelines and the resulting sentence was based on undisputed facts and were consistent with the law. Petitioner's claims are unsubstantiated and do not merit relief. Therefore, Petitioner is denied a reduction of his sentence. For the reasons stated, it is the finding of this Court that Petitioner's Motion for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 is denied. An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:         April __21__, 2008
Orig.:        Clerk
cc:          All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File